UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NATHAN L. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-582 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On August 1, 2018, plaintiff Nathan L. Hill filed a complaint in this Court seeking review of the final decision of the defendant, the Commissioner of Social Security, denying his applications for social security disability benefits[1] [DE 1]. The matter is briefed and ripe for decision [DE 22; DE 25-28]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

**I. FACTS**

Mr. Hill alleges that he has been unable to work since January 20, 2012. Mr. Hill suffers from several physical impairments, including chronic back and left shoulder pain. That said, the only issues raised in this appeal concern Mr. Hill's mental impairments and focus primarily on his ability to sustain concentration, persistence, and pace.

---

[1] Mr. Hill filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq., while the SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will be made to the regulations applicable to DIB for clarity.

In December 2014, reviewing state agents initially acknowledged that Mr. Hill suffers from a non-severe affective disorder which causes him mild difficulty with maintaining concentration, persistence, or pace. (R. at 96-1111). Upon reconsideration in May 2015, the state agents opined that Mr. Hill's mental disorder actually caused him moderate difficulty with maintaining concentration, persistence, or pace, along with mild difficulty with his activities of daily living and social functioning. It was further noted that Mr. Hill had suffered from "one or two" episodes of decompensation of an extended duration. (R. at 114-35). In fact, Mr. Hill was hospitalized for almost two weeks in early 2015 for depression with suicidal ideation and personality disorder. Following his discharge, Mr. Hill received continuing psychological treatment and attended therapeutic sessions through the substance abuse clinic.

During his assessment at the clinic, Mr. Hill was observed as having slow speech and psychomotor activity, concentration issues, and limited insight. (R. at 607-21). It was reported that Mr. Hill did "not seem to appreciate the role of substance use issues in his difficulties." In May of 2015, Mr. Hill gave his therapist permission to call his sister because Mr. Hill demonstrated that he was a poor historian. It was recommended that Mr. Hill be given intensive case management assistance to help him remember to attend his appointments and take his medications.

The record demonstrates that Mr. Hill required similar assistance since at least October 2012. At that time, a psychological assessment evidenced that Mr. Hill would likely require assistance managing any funds that he was to be awarded. Mr. Hill was diagnosed with adjustment disorder and depressed mood which rendered him unable to handle routine and/or non-routine changes in the workplace. However, the examining psychologist believed that Mr. Hill could attend and concentrate long enough to complete simple tasks.

Psychiatry records from 2015 also indicate that Mr. Hill was diagnosed with bipolar disorder and depression, along with auditory hallucinations. His alcohol use disorder and cannabis use disorder were charted as being in remission. By September 2015, Mr. Hill was being treated for ongoing depression, schizoaffective disorder, and post-traumatic stress disorder. A CT scan revealed "shrinkage of brain tissue caused from chronic alcohol abuse." The following month it was documented that despite remaining alcohol free for approximately one year, Mr. Hill continued to suffer from "profound psychiatric issues."

In April 2016, an examining psychologist indicated that Mr. Hill's prognosis was "poor overall" and he was likely to remain relatively stable. A neuropsychological evaluation from July 2016 (R. at 1286-94), revealed that Mr. Hill demonstrated "significantly slowed processing speed, diminished attention, variable executive functioning, and some memory weaknesses." Although Mr. Hill could perform simple tasks, he did so poorly within time limits. Mr. Hill was diagnosed with major depressive disorder and substance-induced neurocognitive impairment, along with substance use disorders in remission.

On May 18, 2017, Mr. Hill had a hearing before Administrative Law Judge Lee Lewin ("ALJ") during which Mr. Hill, Mr. Hill's sister, a vocational expert ("VE"), and a medical expert ("ME") testified. The ME admittedly had no background in psychology and confined his opinion to assessing Mr. Hill's physical state. Mr. Hill testified to his physical limitations caused by pain and to his suffering from memory problems for over five years. In fact, Mr. Hill indicated that he stopped working in 2005, until he was reminded that it was 2011 when he last worked. Mr. Hill also admitted to recently consuming alcohol and marijuana. Given Mr. Hill's memory problems, Mr. Hill's sister testified on his behalf and indicated that Mr. Hill is not self-sufficient and that he prefers to be alone.

In response to hypothetical questions posed by the ALJ, the VE testified that a person of Mr. Hill's age and background but limited to medium work (and a few other exertional restrictions) involving only simple, routine tasks with "no fast-paced production rate or strict quota requirements" and only occasional contact with others could perform work as a machine feeder, dining room attendant, and laundry worker. Relying on the VE's testimony that Mr. Hill was capable of performing these jobs (given the above assigned residual functional capacity),[2] the ALJ rendered an unfavorable decision for Mr. Hill on August 16, 2017. The Appeals Council denied Mr. Hill's request for review, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Mr. Hill seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

---

[2] Residual Functional Capacity ("RFC") is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step evaluation to determine whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In order, these steps are:

  1. Whether the claimant is currently engaged in substantial gainful activity;

  2. Whether the claimant has a medically severe impairment;

> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner finds a disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if no listing is met or equaled, then between steps three and four, the ALJ must assess the claimant's RFC, which he uses in turn to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Hill argues that the ALJ erred by (1) failing to submit Mr. Hill's most recent comprehensive neuropsychological examination to expert scrutiny for purposes of deriving his psychological RFC; and (2) failing to adequately account for Mr. Hill's acknowledged "moderate" limitations with maintaining concentration, persistence, and pace (by limiting him merely to unskilled work with no fast-pace production rate or strict quota requirements). For the reasons explained below, the Court agrees that the RFC determination with respect to Mr. Hill's mental limitations lacks sufficient evidentiary support. This shortcoming requires remand for further assessment but does not direct a finding of disability. While Mr. Hill also contests the ALJ's medical equivalence determination under the listings for mental disorders, this issue can be further explored on remand.

### IV.  ANALYSIS

A claimant's residual functional capacity "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). That includes any deficiencies a claimant may have in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga*, 794 F.3d at 814 (stating that an ALJ "must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace"). As the Seventh Circuit and the Social Security Administration have recognized, deficiencies in those areas can manifest in a number of different ways for different plaintiffs, and can affect not only the complexity of tasks claimants are able to perform, but their ability to stick with a given task and to do so over a sustained period. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); SSR 85-15, 1985 WL 56857 (1985) (emphasizing "the importance of thoroughness in evaluation on an individualized basis").

In many cases, however, ALJs have attempted to address such deficiencies by limiting a claimant to simple, repetitive work. In those cases, the Seventh Circuit has "repeatedly rejected" the notion that "'confining the claimant to simple, routine tasks" adequately accounts for limitations in concentration, persistence, and pace. *Varga*, 794 F.3d at 814–15 (collecting cases); *accord Yurt*, 758 F.3d at 858–59; *Warren v. Colvin*, 565 F. App'x 540, 544–45 (7th Cir. 2014); *O'Connor-Spinner*, 627 F.3d at 620 ("[L]imiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009). Moreover, limiting an individual to work that is "free of fast[-]paced production requirements, involving only simple work[-]related decisions with few if any work[]place changes and no more than occasional interaction with coworkers or supervisors" may fail to account for a claimant's ability to maintain concentration, persistence, and pace.

*Varga*, 794 F.3d at 815. This is the case when an ALJ fails to define phrases like "fast-paced production," because without such a definition, "it would have been impossible for the VE to assess whether a person with [the claimant's] limitations could maintain the pace proposed." *Id*.

Here, the ALJ found that Mr. Hill suffered from the severe mental impairments of adjustment disorder, bipolar disorder, schizoaffective disorder, neurocognitive impairment, and drug abuse. The ALJ then determined that Mr. Hill had "moderate" limitations with regard to concentrating, persisting, or maintaining pace. However, the ALJ only accounted for those deficiencies in Mr. Hill's RFC by stating that he was limited to "perform[ing] simple and routine tasks" without fast-paced production rate or strict quota requirements. That is the same limitation the Seventh Circuit has repeatedly rejected as insufficient, especially where the ALJ never defined for the VE what was meant by no fast-production rate or strict quota requirements. *See id*.; *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace").

The Commissioner attempts to defend the ALJ's decision by noting that the ALJ also relied on the psychologist's opinion from October 2012 indicating that Mr. Hill could attend and concentrate long enough to complete simple tasks. But this opinion was provided before Mr. Hill was hospitalized on account of his fragile mental state and after he continued receiving treatment for his ongoing mental disorders. In addition, the psychologist's opinion pre-dated those opinions of the state agents who opined upon reconsideration that Mr. Hill suffered from moderate difficulty with maintaining concentration, persistence, or pace, along with mild difficulty carrying out activities of daily living and social functioning. Thus, even if the ALJ relied on the psychologist's opinion from 2012 as the Commissioner argues, this opinion was rendered

without consideration of years' worth of medical records documenting Mr. Hill's treatment for additional mental disorders and demonstrating the significance of Mr. Hill's mental health impairments. *See Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (noting that an ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the physician's opinion) (citing *Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.")). And consistent with Mr. Hill's argument, the ALJ never submitted the most recent medical evidence, including the 2016 comprehensive neuropsychological examination evidencing Mr. Hill's problems with performing tasks within time limits, to expert scrutiny for purposes of deriving Mr. Hill's psychological RFC. This occurred even though it was the ALJ's responsibility to recognize the need for a further medical evaluation for this purpose. *See, e.g.*, *Fly v. Colvin*, No. 3:14-cv-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) (indicating that while the final RFC determination is a decision reserved to the Commissioner, the ALJ is not free to choose whatever limits he likes; rather, the RFC limitations must find a basis in the evidence).

      In sum, the ALJ's decision does not contain the requisite logical bridge from the evidence to its RFC conclusion. *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (remanding due to the absence of "an 'accurate and logical bridge' between the ALJ's recitation of the mental medical evidence and the decision to account for [the claimant's] mental impairments by limiting him to unskilled work"); *see DeCamp*, 916 F.3d at 676. The decision concludes without adequate explanation that Mr. Hill has moderate difficulties in concentration, persistence, or pace, and

then asserts, likewise without sufficient explanation, that he was limited to performing simple, routine tasks without fast-pace production rates or strict quota requirements. Without the requisite explanation to bridge those gaps, and in light of the Seventh Circuit's holdings that the imposed limitations cannot be reflexively applied to account for these difficulties, the Court cannot find that the RFC accounts for all of Mr. Hill's limitations.

For purposes of remand, the Court further notes that the ALJ opined that Mr. Hill suffers from the severe impairment of drug abuse. Yet, the ALJ made this determination without further elaboration. Given the existence of medical evidence supporting Mr. Hill's potentially having an ongoing substance addiction, should the ALJ find that Mr. Hill is disabled, then the ALJ may need to explain whether Mr. Hill's addiction issues are a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (indicating that the fact that substance abuse aggravates a mental illness does not prove that the mental illness itself is not disabling).

These errors require reversal, as the VE's testimony addressed the RFC that the ALJ adopted, and there is no evidence of whether any jobs would be available if the ALJ adopted additional limitations. Accordingly, the Court must remand this matter to the Commissioner for further proceedings. On remand, the parties may also address Mr. Hill's argument as to whether he meets a listing.

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: August 21, 2019

                                          /s/ JON E. DEGUILIO
                                    Judge
                                    United States District Court